111 F.3d 137
 1997-1 Trade Cases P 71,836
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CHROMA LIGHTING, a California corporation; and Charles T.
Von Der Ahe, an individual, Plaintiffs-Appellees,
v.
GTE PRODUCTS CORPORATION a Delaware corporation, et al., Defendants,
and
Sylvania Lighting Services Corporation, a Delaware
corporation, Defendant-Appellant.
 No. 94-55581.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1995.
Decided April 10, 1997.
 
 Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sylvania asserts it is entitled to judgment as a matter of law on its Robinson-Patman claim because (1) Von Der Ahe failed to prove essential elements of his case for liability; (2) Von Der Ahe failed to prove antitrust damages; and (3) Sylvania established the meeting competition defense. In the alternative, Sylvania seeks a new trial on the Robinson-Patman claim on the ground that the district court gave an erroneous jury instruction on the meeting competition defense. Finally, Sylvania argues that Von Der Ahe's claim of breach of the implied covenant of good faith and fair dealing should have been barred as a matter of California law. We address each of these issues in turn.[1]
 
 ROBINSON-PATMAN CLAIM
 
 3
 We review the denial of judgment as a matter of law de novo.[2] Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir.1993). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's. Id.
 
 Elements of a Prima Facie Case
 
 4
 To establish a violation of the Robinson-Patman Act, a plaintiff must show that a defendant made contemporaneous sales of goods of like grade and quality to competing customers at different prices. See Lawrence Anthony Sullivan, Handbook of the Law of Antitrust § 217 (1977).
 
 
 5
 Sylvania first argues that Von Der Ahe presented no evidence of CNA price differences on actual sales. However, Sylvania's own expert testified that the prices Von Der Ahe paid on actual CNA sales were 2.38% less favorable than the prices paid for the same items by West-Lite and Regency. RT 4167-71; D.ER. 1014 (Exh. 5131). Moreover, Sylvania's assertion that a 2.38% difference is de minimis was refuted by Rostvold's testimony that in the lamp business, a 2% difference in price would cause a customer to choose one distributor over another. RT 1533.
 
 
 6
 Second, Sylvania argues that Von Der Ahe made no effort to show that he actually competed against West-Lite and Regency for the sale of the particular lamp types subject to discriminatory prices. However, Von Der Ahe did present evidence that he competed with West-Lite and Regency on a "core" 20% of lamp types, which constituted 80% of Von Der Ahe's and his competitors' businesses, and that all lamp types were subject to price discriminations based on volume discounts and profit incentive programs. RT 164, 404-06, 421, 551-59, 2631-32, 3889.
 
 
 7
 Sylvania also argues that Von Der Ahe could not have been in competition with either West-Lite or Regency for PRA sales because Von Der Ahe purchased his lamps from Sylvania only after he had a customer's order in hand. According to Sylvania's theory, if Von Der Ahe purchased a lamp from Sylvania after he had already "sold" that lamp to a customer, then Von Der Ahe could not be in competition for the resale of that particular lamp. Sylvania also reasons that if Von Der Ahe did not have a customer bid, then he would have no reason to purchase a lamp from Sylvania, and there could be no "contemporaneous" sale. Sylvania's theory is unconvincing. Whether or not Von Der Ahe actually purchased his inventory before or after he made customer sales does not change the fact that he competed with West-Lite and Regency for each sale on the basis of the price he expected to get from Sylvania. Moreover, the evidence shows that discrimination in PRA prices always occurred after customer sales had been made anyway, because West-Lite and Regency received their discriminatory "claimbacks" only after they had sold lamps to customers. RT 2552-53. This evidence is sufficient to satisfy the Robinson-Patman Act's requirement that discriminatory sales be "substantially contemporaneous." Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1191 (9th Cir.1984).
 
 
 8
 Finally, Sylvania argues that Von Der Ahe failed to prove competitive injury, either through a showing that Sylvania maintained a substantial price difference over time, or through evidence that Von Der Ahe lost sales or profits due to Sylvania's discriminatory prices. See Falls City Ind., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 435-36 (1983). We disagree. Rostvold testified that the CNAs, PRAs, and other pricing documents for Regency and West-Lite showed that Sylvania offered Regency and West-Lite prices that were three to five percent lower than the prices offered to Von Der Ahe for the entire four years that Von Der Ahe was in business. RT 1518-19, 1541, 1569-71. Moreover, as noted above, Rostvold testified that as little as a 2% difference in price will cause a customer to choose one lamp distributor over another. RT 1532-33. In addition, Von Der Ahe presented 15 specific examples of lost sales and profits, in conjunction with testimony from several customers stating that they switched to West-Lite or Regency because of the price difference or would have switched if Von Der Ahe had not lowered his prices to meet the competition. RT 1730-31, 2151-52, 2155-56. Sylvania also admits that Von Der Ahe lost sales involving Coldwell Banker. Appellant's Br. at 17.[3] In sum, the record contains enough evidence to support the jury verdict of competitive injury.[4]
 
 Antitrust Damages
 
 9
 Sylvania argues that Von Der Ahe failed to prove the amount of antitrust damages with sufficient specificity because he did not present evidence of the actual effect of alleged discriminatory sales "transaction by transaction." Appellant's Br. at 25. However, in an antitrust action, a plaintiff must establish only a "just and reasonable" basis for estimating the amount of damages. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946). Furthermore, a finder of fact is permitted "to act upon probable and inferential, as well as direct and positive proof" in calculating antitrust damages. Id. (quoting Story Parchment Co. v. Paterson Co., 282 U.S. 555, 561-4 (1931)). Sylvania's "transaction by transaction" method for proof of damages is contrary to this relaxed standard.
 
 
 10
 Sylvania also argues that even under a relaxed standard, Von Der Ahe failed to prove the amount of damages because his five damage studies should have been excluded from evidence. Sylvania's numerous criticisms of Von Der Ahe's and Rostvold's damage studies, however, go only to their weight. For instance, Sylvania claims that the lost profits study prepared by Rostvold "relied solely on estimates for four essential factors used to calculate lost profits each year." Appellant's Br. at 33. Sylvania also criticizes Von Der Ahe's A and B studies as "unreliable." Appellant's Reply Br. at 8. Since it is the province of the jury to assess weight and credibility, we cannot reverse the jury's determination as to damages as a matter of law.
 
 
 11
 Finally, Sylvania claims that the district court abused its discretion in permitting Von Der Ahe to testify regarding damages because Von Der Ahe was not qualified to be either a lay or expert witness. We believe, however, that Von Der Ahe met the liberal standards for qualifying as an expert on the subject of his business' lost profits or sales because he was the owner and manager of his business. Cf. Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir.1990) (accountant of business not required to qualify as expert to testify regarding lost profits or sales or to project future profits).
 
 
 12
 In sum, Von Der Ahe presented sufficient evidence to establish the amount of damages.
 
 Meeting Competition Defense
 
 13
 Sylvania claims that it proved, as a matter of law, that it lowered its prices "in good faith to meet an equally low price of a competitor." 15 U.S.C. § 13(b). Specifically, Sylvania argues that it offered discriminatory prices to Regency and West-Lite in response to "a price war started by Philips." Appellant's Br. at 43. Von Der Ahe argues that ample evidence supports the jury's decision that Sylvania did not act in good faith when it lowered prices to Von Der Ahe's competitors. We agree with Von Der Ahe.
 
 
 14
 The record contains evidence to support the jury's finding that Sylvania was not acting in good faith when it offered discriminatory prices to Regency and West-Lite. There is evidence that Competitive Activity Reports ("CRAs")--a key component of the documentation corroborating the discounts Sylvania was supposedly meeting--were falsified by Sylvania employees, RT 2793-96, 3559-65, 3576-77, 5578-9.[5] A Sylvania employee testified that most price exceptions were approved without verification. RT 5580. Regency's president also conceded that certain rebates were not made in response to competition from Philips. RT 3559. Because a jury could reasonably find from this evidence that Sylvania's lower prices to Regency and West-Lite were not the result of a good-faith effort to meet the prices offered by other manufacturers, we decline to hold that Sylvania established the meeting competition defense as a matter of law.
 
 
 15
 Jury Instruction on Meeting Competition Defense
 
 
 16
 Sylvania argues that the jury instruction on the meeting competition defense was erroneous because it permitted the jury to consider whether Sylvania could have pursued "alternative courses of action" in responding to the gray market other than by lowering prices to Von Der Ahe's competitors. Sylvania claims that this instruction was erroneous because (1) it added a new factor to those identified by United States v. United States Gypsum Co., 438 U.S. 422, 451 (1978), as relevant to the good faith analysis; and (2) there is no policy reason for adding this factor since sellers need no additional incentive to find ways to stamp out gray markets. Whether a jury instruction misstates the elements that must be proved at trial is a question of law that is reviewed de novo. Caballero v. Concord, 956 F.2d 204, 205 (9th Cir.1992).
 
 
 17
 Neither of Sylvania's arguments is persuasive. As Von Der Ahe argues, Gypsum makes clear that the list of factors it sets out for evaluating an asserted meeting competition defense is not exclusive. 438 U.S. at 454-55 ("Given the fact-specific nature of the inquiry, it is difficult to predict all the factors the FTC or a court would consider in appraising a seller's good faith in matching a competing offer."). Moreover, consideration of a seller's ability to address a competitive challenge by means other than price-cutting is thoroughly appropriate in evaluating the seller's good faith. "The standard of good faith is simply the standard of the prudent businessman responding fairly to what he reasonably believes is a situation of competitive necessity." Falls City, 460 U.S. at 441. Since the availability of other courses of action affects whether or not there is a situation of competitive necessity, it is relevant to the good faith inquiry. Thus, the district court's "alternate courses of action" instruction was not erroneous.
 
 STATE LAW ISSUES
 
 18
 Sylvania argues that Von Der Ahe's claim of breach of the implied covenant of good faith should be barred as a matter of California law because the Distributorship Agreement between Sylvania and Von Der Ahe contained no provisions regarding the prices Sylvania would charge to competing distributors. Von Der Ahe responds generally that Sylvania's discriminatory pricing deprived him of the benefits of the contract, and therefore breached an implied covenant that is read into every contract. We agree with Sylvania.
 
 
 19
 Under California law[6], the implied covenant of good faith protects only the express promises of the contract. Racine & Laramie, Ltd. v. Department of Parks & Recreation, 14 Cal.Rptr.2d 335, 339 (Cal.Ct.App.1992) ("If there exists a contractual relationship between the parties ... the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contact."); Foley v. Interactive Data Corp., 765 P.2d 373, 394 (Cal.1988) ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes.") The Distributorship Agreement between Sylvania and Von Der Ahe provided only that Sylvania would sell lighting products to Von Der Ahe and that Von Der Ahe would promote the sale of Sylvania's lamps. Sylvania did not promise to provide Von Der Ahe with the lowest prices of any distributor, nor did it promise to treat all distributors equally. Thus, Sylvania's price discrimination did not violate or in any way relate to the express provisions of the Distributorship Agreement and therefore could not constitute a violation of the implied covenant of good faith. Von Der Ahe's interpretation of the Distributorship Agreement would imply an additional obligation of Sylvania--the obligation not to price discriminate--and is thus inconsistent with settled California law. See Racine & Laramie, 14 Cal.Rptr.2d at 339.
 
 CONCLUSION
 
 20
 The judgment is AFFIRMED, except that to the extent, if any, the judgment rests on the claim of breach of the implied covenant of good faith and fair dealing under state law, it is REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sylvania's argument that it is entitled to judgment as a matter of law on the Robinson-Patman claim because it rebutted any inference of competitive injury by showing no harm to competition is disposed of in a published opinion filed herewith
 
 
 [2]
 Von Der Ahe's assertion that the abuse of discretion standard applies is contrary to established Ninth Circuit law, and is not supported by Transgro, Inc. v. AJAC Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985), as Von Der Ahe claims
 
 
 [3]
 Sylvania also argues that to establish competitive injury, Von Der Ahe had to prove that Sylvania's reduced prices to Regency and West-Lite led to a reduction in their resale prices. Von Der Ahe argues that an effect on retail pricing is not necessary to show competitive injury because other factors such as low profit margin may provide a favored purchaser with a significant competitive advantage. We note that although the Supreme Court once said that a Robinson-Patman plaintiff's claim was "particularly weak" where he was unable to show that favored retailers lowered their retail prices, the Court specifically reserved the question of whether "such a failure as a matter of law demonstrates no competitive injury." J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 564-65 n. 4 (1981). However, we decline to answer this question at this time because we believe that Von Der Ahe did present evidence from which a jury could infer that Sylvania's discriminatory practices influenced resale prices. Von Der Ahe presented testimony from former Regency salespeople stating that it was common to go below suggested retail to compete with other Sylvania distributors, and that "if [competition] was against another Sylvania distributor, nobody had better prices than [Regency] did." RT 4794-96, 4851-56, 4876-77, 4880-81
 
 
 [4]
 Sylvania also argues that Rostvold was not qualified to give expert testimony regarding competitive injury because (1) Rostvold had no antitrust experience, (2) his opinion was formed solely on the basis of discussions with Von Der Ahe and Von Der Ahe's accountant and attorneys, and (3) his opinion was premised on an implausible theory, namely that Sylvania was seeking to increase the market share of large distributors because large distributors are easier to control. First, Rostvold holds a doctorate in economics from Stanford, and therefore meets the liberal standards for qualification as an expert witness established by Fed.R.Evid. 702. Second, the source of Rostvold's data goes only to the weight of his testimony, not to admissibility, for it is the expert's reasoning or methodology, not the source of his data, that qualifies him as an expert. Third, while Rostvold's theory about large distributors being easier to control may qualify as an implausible theory, Sylvania does not point to actual testimony by Rostvold premised on this theory. Therefore, we hold that the district court did not abuse its discretion, United States v. Rahm, 993 F.2d 1405, 1409-10 (9th Cir.1993), in admitting Rostvold's testimony regarding competitive injury
 
 
 [5]
 At the hearing on the post-trial motions, Judge Keller described the credibility of the CRAs as "extraordinarily suspect." Tr. of Proc. (Mar. 15, 1994) 33
 
 
 [6]
 California law apparently governs the Distributorship Agreement. Although Paragraph 12 of the Agreement states that Massachusetts law governs, a district court order filed on May 17, 1993, dictates that Massachusetts law will not apply to any claims or issues at trial. CR 185. Both Sylvania and Von Der Ahe seem to assume that California law applies